John Franklin BURNS, Appellant,

v.

Dr. George BETO, Director, Texas Department of Corrections, Appellee.

No. 23201.

United States Court of Appeals
Fifth Circuit.

Nov. 29, 1966.

Rehearing Denied Jan. 30, 1967.

J. R. Ramsey, Houston, Tex., for appellant.

Sam R. Wilson, Asst. Atty. Gen., Houston, Tex., Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., for appellee.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and CHOATE, District Judge.

RIVES, Circuit Judge.

Burns, the appellant, is confined in the Texas State Penitentiary at Huntsville, Texas, under sentence of death. Upon his trial on January 15, 1964, in Criminal District Court No. 2 of Harris County, Texas, for the murder of Jessie Odum, there was admitted in evidence over his objection his written statement admit-

ting in effect that he killed Odum. The jury found him guilty of murder with malice and assessed his punishment at death. The judgment of conviction was affirmed by the Court of Criminal Appeals of Texas.[1] Subsequently, Burns was sentenced on June 3, 1965, by the Texas district court in which he was tried, to be executed on August 5, 1965 by death in the electric chair.

On July 20, 1965 Burns filed his application for habeas corpus and for a stay of execution in the United States District Court for the Southern District of Texas. That court stayed his execution until November 15, 1965 to afford him an opportunity to file his application for habeas corpus with the Texas Court of Criminal Appeals which was due to reconvene on October 4, 1965. On October 11, 1965 the Texas Court of Criminal Appeals denied without written opinion leave to file application for habeas corpus and stay of execution. Burns then renewed his prayer for habeas corpus to the federal district court. After response by the appellee, the district court found "an evidentiary hearing not to be required under the teachings of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)," and heard the case upon the criminal trial record. The district court wrote an extended opinion and dismissed the application for habeas corpus.

On this appeal Burns' counsel raises two issues. First, he argues that the introduction at the conclusion of the evidence of photographs of the body of the deceased and of the bloody hands of Burns constituted a denial of due process. Second, he insists that the introduction of Burns' confession into evidence violated due process for a number of different reasons, hereafter discussed.

### Photographs.

In the case of each photograph, the photographer testified, in substance, that it truly and accurately represented that which it purported to depict. The district court then declined to permit Burns' counsel to examine the photographer on *voir dire*. Counsel thereafter declined to cross-examine the photographer. Clearly, the refusal to permit *voir dire* examination presents no constitutional problem.

Even from the faint Zerox copies of the photographs which appear in the record used in this Court, it appears that they were extremely gruesome and might well arouse feelings of horror and indignation on the part of the jury. The federal district court did not view the actual photographs, some of them in color, and, accordingly, upon review this Court has not viewed those photographs. They have, however, been deposited with the Clerk of this Court so as to be available in the event of further review. We accept as true the detailed descriptions of the photographs contained in the majority opinion and in the dissenting opinion in the Texas Court of Criminal Appeals, 388 S.W.2d 690, 699. The Texas Court of Criminal Appeals held, in effect, that each of the pictures was competent evidence tending to solve disputed fact issues and to refute the testimony of Burns.

Burns' counsel argues that the prime motive for the introduction of the photographs was to secure the death penalty and that the receipt of the most gruesome of them over Burns' objection was so prejudicial as to infringe the fundamental right to a fair trial guaranteed by the due process clause of the Fourteenth Amendment. He cites no cases directly in point but relies largely upon the development of the due process clause in Estes v. State of Texas, 1965, 381 U.S. 532, 536–552, 85 S.Ct. 1628, 14 L.Ed.2d 543. We find no precedent directly on this issue as a constitutional problem, but are somewhat aided by the cases dealing with the evidentiary problem of the admissibility of pictures of the body of the deceased. Most of those cases are collected in an annotation in 73 A.L.R.2d 769 on "Admissibility of Photograph of

1. Burns v. State of Texas, 1965, Tex.Cr.App., 388 S.W.2d 690.

Corpse in Prosecution for Homicide or Civil Action for Causing Death," and its supplemental service.

■ Burns' counsel concedes that the admission of photographs must necessarily rest largely in the discretion of the trial judge and that his action will not be disturbed in the absence of abuse of discretion; but argues that where the prejudicial character of the pictures outweighs their probative value, they should be excluded. He further insists that, in an extreme case such as this, balancing of prejudicial character against probative value raises a question of due process which should be reviewed by the federal courts.

As we understand the decision of this case by the Texas Court of Criminal Appeals, it did not balance the prejudicial character of the photographs against their probative value, but simply held that the photographs were admissible in evidence because they tended to settle disputed fact issues. The timing of the introduction of the photographs at the conclusion of the evidence was occasioned by the defendant Burns testifying in his own behalf, in substance, that he did cut the deceased but was not aware of the extent and severity of the cutting, and that he acted in self-defense.

■■ If we hold that the due process clause requires us to balance the prejudicial character of the photographs against their probative value, we will open wide the door of the federal courts to supervise the admissibility of evidence in state criminal trials. If that is to be done, even in so extreme a case as described in Judge Morrison's dissenting opinion (388 S.W.2d 698, 699), we think that it should be done initially by decision of the Supreme Court of the United States. We hold that, so long as photographs accurately represent what they purport to depict and are logically relevant, their extreme gruesome and prejudicial character cannot make their admission in evidence amount to a denial of due process.

## The Confession.

On the night that Odum was killed, Burns was arrested and carried to the third floor office of Captain M. F. Patton of the Sheriff's Department, Harris County, Texas. He was sitting in that office when Captain Patton arrived "around midnight or a little bit after" and began his interrogation. Approximately an hour and a half later, Burns made a statement to Captain Patton and it was typed by his night clerk, a Mrs. White. The written statement began:

"I, John F. Burns, after first being duly warned by M. F. Patton, the person to whom this statement is made, as follows:

"FIRST—That I do not have to make any statement at all.

"SECOND—That any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, do hereby make the following Voluntary Statement * * *."

■■ It is clear that Burns was not in any way apprised of his right to consult with an attorney or to have one present during the interrogation. If Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were to be applied retroactively, Burns' confession would be inadmissible. Unfortunately for Burns, the holding in *Escobedo* is available only to persons whose trials began after June 22, 1964, and the guidelines in *Miranda* are available only to persons whose trials had not begun as of June 13, 1966. Johnson and Cassidy v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Burns was tried and convicted on January 15, 1964, and, hence, his confession was not rendered inadmissible either by *Escobedo* or by *Miranda*. However, as noted in Johnson and Cassidy v. State of New Jersey, supra, the same safeguards may be invoked as part of an involuntariness claim.

The confession, as it was read to the jury, was not the entire writing signed by Burns. That is shown by the statement of the prosecuting attorney when he said: "I offer the statement with the exception of the part which I have deleted." No ground of objection was assigned at the time to raise the point that a part only of a confession is inadmissible. Burns' counsel now argues that the admission of the confession with a part deleted was so essentially unfair to Burns as to be a denial of due process, citing Estes v. State of Texas, 1965, 381 U.S. 532, 543, 85 S.Ct. 1628; White v. State of Maryland, 1963, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193; and Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Those cases emphasize the necessity of a fair trial in a fair tribunal as a basic requirement of due process, but do not discuss the specific question posed by the admission of only a part of a confession.

The record does not contain the part of the confession which was deleted, or disclose either the language or the substance of that part. However, Burns' brief indicates that exculpatory statements were omitted from the confession, and appellee's brief states, "in this case, the defense to the murder charge was self-defense and the statements in the confession which may have supported this defense were omitted by the prosecution in the offer of the confession."

 Burns' counsel argues that Burns was forced to take the stand to testify to the omitted exculpatory portions of the confession. If that is true, the contention of a denial of due process would indeed be of great weight. However, that does not seem correct. Under Texas law, if the State introduces in evidence the confession of a defendant, it is bound by the exculpatory matters contained in the confession until they are shown by the evidence to be untrue. Wooley v. State, 1965, 162 Tex.Cr.R. 378, 285 S.W.2d 218, 220. Accordingly, the State may introduce a part only of a confession, whereupon the defendant may introduce the exculpatory statements or

any portion thereof. Ingram v. State, 1932, 120 Tex.Cr.R. 8, 47 S.W.2d 285; Banks v. State, Tex.Cr.App.1932, 50 S.W. 2d 834. Thus Texas procedure provides a method of proving the exculpatory statements other than by the testimony of the defendant himself. If unfair at all, it does not appear so basically unfair as to amount to a denial of due process of law. In our opinion, the fairness *vel non* of that procedure was well within the boundaries of discretion to be exercised by the State without restraint from the Federal Constitution.

Appellant contends that the confession was not voluntary because, among other reasons, Burns was intoxicated at the time of his interrogation. The evidence is without dispute that Burns and some friends spent the evening from 7:30 to after 11:00 o'clock going from bar to bar, drinking beer. At about 9:30 or 10:00 P.M. Jessie Odum, the deceased, joined the group at one of the taverns and they continued on their rounds. By 11:30 P. M. Jessie Odum had been killed. Dr. Jachimczyk, the Chief Medical Examiner of Harris County, Texas, testified that a test of Odum's blood after he had been killed showed the alcoholic content to be .267 and that .10 is considered the level of intoxication, so that Odum was very intoxicated when he met his death. So far as appears from the record, no blood test for intoxication was given or offered to Burns. Captain Patton testified that when the statement was taken "you could tell he had been drinking." He was asked, "In your opinion would you say he was intoxicated?" and replied, "No, sir, not necessarily at that time."

After the foregoing testimony of Captain Patton, given in the absence of the jury, the following occurred:

"A. [Defense counsel]: That is all the questions I have on voir dire. We do want to object to this statement.

\* \* \*

"THE COURT: The objection will be overruled as to the admissibility of the statement. If you raise a question as to the voluntariness

of the statement I will submit it to the jury as a fact issue, but as to the admissibility, at this time, it is admissible.

"[Defense counsel]: Note our exception.

"MR. DUNN [State's Attorney]: I offer the statement with the exception of the part which I have deleted.

"THE FOLLOWING TRANSPIRED IN THE PRESENCE OF THE JURY:

"MR. DUNN: May I read the statement to the jury?

"THE COURT: Yes. Read it.

"THE STATEMENT WAS THEREUPON READ TO THE JURY
\* \* \*."

The district court held that the voluntariness of the statement was never questioned, and further found "that within the meaning of Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938), and Fay v. Noia, 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963), petitioner has effectively waived his right to now question the voluntariness of his confession in this collateral proceeding." We do not agree.

While no grounds were assigned for the objection of Burns' counsel to the statement, it seems clear that the only substantial question as to its admissibility related to its voluntariness *vel non*. From the colloquy, it would appear that both counsel and the trial court so understood. The trial concluded on January 15, 1964, about six months before Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 1028, was decided on June 22, 1964.[2] At that time Texas followed the "New York" rule described by Mr. Justice Black as: "If there is a factual con-

flict in the evidence as to voluntariness over which reasonable men could differ, the judge leaves the question of voluntariness to the jury." 378 U.S. at 414, 84 S.Ct. at 1801. See Texas cases cited on pages 399 and 417 of 378 U.S., 84 S.Ct. 1774.[3] It is thus clear that the State trial judge was simply following the "New York" rule which then prevailed in Texas.

After the confession was admitted and read to the jury, the issue of Burns' intoxication *vel non* was further developed. Of the two deputy sheriffs who drove Burns to the sheriff's office, one testified that he could have been drinking but his actions didn't show it, and the other testified that, "I don't think he was intoxicated, but he had been drinking." Burns testified in his own behalf as follows:

"Q. Do you recall giving a statement?

"A. I recall telling him something about a statement, but there are things in that statement I don't remember saying anything about.

"Q. Do you recall how long you were in Captain Patton's office?

"A. No, I don't. There were so many photographers and reporters and cameramen coming in and out.

"Q. Did they take your clothing from you?

"A. Yes, sir.

"Q. And gave you some jail clothing?

"A. Yes, sir. They took my boots and my mechanic's uniform and gave me this pair of Khaki pants and a tee-shirt.

"Q. Do you remember signing the statement?

"A. Just vaguely.

"Q. You had been drinking that evening, from the account of the tes-

---

2. In Linkletter v. Walker, 1965, 381 U.S. 618, 628, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, n. 13, it was noted that, "Jackson v. Denno, 378 U.S. 368, [84 S.Ct. 1774] (1964), involving a coerced confession, was also applied to the petitioner who was here on a collateral attack," thus supporting the conclusion of retroactivity.

3. See also Sims v. State of Georgia, 1965, 221 Ga. 190, 144 S.E.2d 103, cert. granted, June 20, 1966, 384 U.S. 998, 86 S.Ct. 1953, 16 L.Ed.2d 1013, now pending on current Supreme Court Docket as No. 251, 35 L.W. 3049.

timony in here, somewhere between six and ten beers is that correct?

"A. I think if you got right down to it, it was more than that.

"Q. Did you feel intoxicated?

"A. Well, I was feeling pretty spry."

We conclude the Burns has not been given an adequate hearing upon the voluntariness of his confession, including the resolution of the evidentiary conflicts as to his intoxication *vel non* as well as all other matters which might affect its voluntariness. Townsend v. Sain, supra, would at the least, require a full evidentiary hearing to determine the factual context in which Burns' confession was given. The procedure to be followed is outlined in Part IV of the opinion in Jackson v. Denno, supra, 378 U.S. at 391–396, 84 S.Ct. 1774. The judgment of the district court is therefore reversed and the case is remanded to the district court to allow the State a reasonable time to afford Burns a hearing or a new trial, failing which Burns is entitled to his release.

Reversed and remanded.

CHOATE, Senior District Judge (dissenting):

There are some areas in which I am entirely in accord with this court's opinion. First, I concur with the result of the decision on the first issue discussed. In my view the admissibility of relevant, accurate photographs in a state proceeding does not raise a question of constitutional dignity.

As to the second issue, I agree that Burns was not constitutionally entitled to consult with an attorney or have one present during his interrogation, since the temporal factor makes Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), inapplicable to this cause under Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772 (1966).

Third, I agree that neither due process nor other constitutional mandate was violated by the procedure where the state introduced only a part of a confession into evidence, since the defendant, without taking the stand himself, was at liberty to introduce the rest of the statement.

As to the remaining point, with all due respect, I am in earnest opposition.

The proper place of the writ of habeas corpus in the judicial system is "one of great importance—a remedy against illegal restraint—but it is not a substitute for or an alternative to appeal, nor is it a burial ground for valid state procedures." Fay v. Noia, 372 U.S. 391, 448, 83 S.Ct. 822, 853 (1963) (Clark, J., dissenting).

It seems to me that the majority has used its imagination to contrive a constitutional fault that does not really exist in the state court proceedings with respect to the defendant's confession and the adequacy of hearings on that issue. The result is "to subvert the integrity of state criminal justice." Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 760 (1963). My conclusion is based upon the following considerations:

1. At Burns's trial by the Criminal District Court No. 2, Harris County, Texas, the trial court indicated its awareness that Burns's counsel was questioning the circumstances under which Burns was interrogated prior to his confession. After a full and fair hearing, the trial court determined that the confession was voluntary.

2. Burns's motion for a new trial received full hearing by the trial court. In that motion his counsel admitted that the "*voluntary* statement of the Defendant showed Defendant had committed the offense." (Emphasis supplied.)

3. His appeal to the Court of Criminal Appeals of Texas was scrupulously considered, and a comprehensive opinion was written, wherein it was stated:

"The voluntary statement of appellant was offered in evidence. Prior to it being admitted, the careful trial judge afforded appellant's counsel the opportunity of, and he fully examined state's witness, Captain M. F. Patton of the Harris County Sheriff's Office,

on voir dire, out of the presence of the jury, on the facts and circumstances surrounding the taking of the confession. No question of force or coercion was raised, the appellant's counsel did inquire if appellant was intoxicated at the time that he gave the statement, and the witness responded that he was not. Appellant's counsel then stated that he objected to the confession, but he did not state upon what grounds. The trial judge then stated that he held the confession admissible. The jury was then brought in and the confession admitted into evidence and no further nor other objection was urged nor was any motion to strike made." Burns v. State, 388 S.W.2d 690, 692 (Tex.Crim. App.1965).

4. The appellate court again examined the record upon Burns's motion for rehearing of the appeal. Id. at 699.

5. Burns's petitions for writ of habeas corpus were considered by the Court of Criminal Appeals and by the district court below. The latter court entered five orders in the matter, totalling eleven and one-half pages.

All this is to say that Mr. Burns's plight has not been taken lightly nor handled summarily by the judiciary. Yet now this court finds possible error unnoticed or uncorrected by the previous judges who have applied their time and wisdom to assuring due process to this defendant. The majority conclusion that Burns has not been given an adequate hearing concerning the issue of the voluntariness of his confession is strained indeed, and completely improper when the record of the state proceedings clearly shows that he received as full a hearing as he sought regarding the factual foundation for his constitutional claim.

Further, in the prior considerations of this petitioner's cause, the courts' conclusions that his confession was admissible were not erroneous. There has never been any allegation or indication of force, coercion, or persuasion of either a physical or mental nature.

Not even Burns's testimony in his own behalf—that he "was feeling pretty spry" that evening—could be construed as evidence that he was intoxicated at the time he made his confession to the extent that his "will was overborne." Reck v. Pate, 367 U.S. 433, 440, 81 S.Ct. 1541, 6 L.Ed. 2d 948 (1961). In short, no reason or allegation of fact appears to justify questioning the admissibility of Burns's confession.

Until the decision in Miranda v. State of Arizona, supra, the role of the Constitution has been only to sift out *undue* pressure, not to assure spontaneous confessions. Law enforcement agencies were justified in relying on that standard prior to the *Escobedo* and *Miranda* decisions. Johnson v. State of New Jersey, supra. The facts alleged fall well short of coercion or undue pressure in my view.

The majority conclusion is based upon Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774 (1964), which is not applicable in the case at bar. Here, the jury did not determine both issues of voluntariness of the confession and of guilt or innocence of the defendant, which was the practice condemned in *Jackson*. No instructions on the issue of voluntariness were given by the court or requested by defendant.

Like every capital case, this is one of serious moment. The opinions and orders of the courts below disclose an appreciation by their judges of their constitutional obligations to the defendant, the state and the nation. Taylor v. State of Alabama, 335 U.S. 252, 264, 68 S.Ct. 1415, 92 L.Ed. 1935 (1948). I believe it is time to place some trust in the courts who have the practical responsibility of trying and disposing of criminal matters on the basis of reality rather than supposition.

ON PETITION FOR REHEARING

PER CURIAM:

The petition for rehearing filed by the appellee in this case is hereby denied.

CHOATE, Senior District Judge (dissenting):

For the reasons stated in my previous dissent, and for the reasons set forth in the very capable brief of appellee on petition for rehearing, I would grant rehearing. Therefore, I respectfully dissent from the denial of appellee's motion for rehearing.